**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| BRIAN RODRIGUEZ and | § | |
| MARINA RODRIGUEZ, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No.  SA-12-CV-345-XR |
| v. | § | |
| | § | |
| U.S. BANK, N.A., | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this day the Court considered Defendant's motion for summary judgment (Doc. No. 46). For the following reasons, the motion is granted in part and denied in part.

### I. Background

**A. Factual Background**

In July of 2004, Plaintiffs Brian Rodriguez and Marina Rodriguez obtained a mortgage loan in the amount of $112,000 from Aames Funding Corporation d/b/a Aames Home Loan ("Aames"). Plaintiffs executed both a Note and a Deed of Trust in connection with the transaction. (*See* MSJ, Exs. A and B.)[1] The Deed of Trust encumbered property located at 314 Leff Place, San Antonio, Texas (the "Property").

Aames subsequently assigned the Note and the Deed of Trust to Defendant U.S. Bank, N.A., as Trustee for Credit Suisse First Boston 2004-AA1 (the "Assignment"). (*See* MSJ, Ex. C.) The Assignment was executed on behalf of Aames by Sherita Duck, "Assistant Secretary," in August of 2004 and was recorded in the Official Public Records of Bexar County in June of

---

[1] Plaintiffs also point out that they obtained a second mortgage loan from Aames on the same day for $28,000. (*See* Resp., Ex. 5.) However, only the enforcement of the $112,000 mortgage loan is at issue in this case.

2010. Defendant asserts that it is currently in possession of both the original Note and the original Deed of Trust and has produced copies of both documents. It appears that Wells Fargo Bank, N.A., through its wholly-owned subsidiary America's Servicing Company, has serviced the loan on behalf of Defendant at all relevant times.

It is undisputed that Plaintiffs became delinquent on their payment obligations by late 2007. (MSJ, Ex. A. ¶ 6; Resp. ¶ 4.)[2] Plaintiffs' delinquency constituted default under the terms of the Note.

A foreclosure sale of the Property was scheduled for September 7, 2010. Defendant, as Trustee for Credit Suisse First Boston 2004-AA1, purchased the Property at the foreclosure sale for $86,700 and the Property was conveyed via a Trustee's Deed. (MSJ, Ex. F.) It appears undisputed that Plaintiffs continued to reside on the Property after the foreclosure sale and that Defendant posted a notice to vacate the Property in March of 2012.

**B. Procedural Background**

Plaintiffs filed their original petition in state court in March of 2012 seeking to enjoin Defendant from proceeding with the eviction process until the state court could determine "Defendant's right to foreclose." (Orig. Pet. ¶ 13.) The state court issued a temporary restraining order enjoining Defendant from proceeding with the eviction until Defendant "provided proof that they [sic] are the valid holder or owner of the note the subject of this suit, with the right to foreclose and that they [sic] have properly provided notice of right to cure [sic] to Plaintiffs." (*See* Notice of Removal, Ex. A.)

---

[2] At some point after they became delinquent on their payment obligations, Plaintiffs sought a loan modification. The parties dispute whether Plaintiffs performed what was required to enter into a loan modification agreement and whether a loan modification agreement was consummated. However, the Court will not detail the disputed facts regarding the loan modification process because whether a loan modification agreement was ultimately consummated is not relevant to any of Plaintiffs' causes of action in this case.

Defendant removed the action to this Court in April of 2012 based on diversity. The live pleading is Plaintiffs' Fourth Amended Complaint.

The Fourth Amended Complaint alleges causes of action for declaratory judgment, violation of the Uniform Commercial Code ("U.C.C."), quiet title, violation of Chapter 12 of the Civil Practice and Remedies Code, and breach of contract. Plaintiffs seek a declaration that the foreclosure sale was void, injunctive relief in the form of an injunction restraining Defendant from proceeding with eviction until Defendant's right to foreclose is determined by the Court, attorney's fees, and, in connection with their Chapter 12 claim, $10,000 and mental anguish damages.

Defendant filed the instant motion for summary judgment on February 1, 2013, seeking summary judgment on all of Plaintiffs' claims. Plaintiffs filed a response to the motion and Defendant filed a reply.

## II. Legal Standard

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-252 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## III. Discussion

### A. Claim to Quiet Title

"The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). To prevail on a claim to quiet title, a plaintiff must show: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st. Dist.] Dec. 30, 2011, no pet.).

It is undisputed that Plaintiffs possess a general warranty deed to the Property and that Defendant claims an interest in the Property pursuant to the foreclosure sale and resulting Trustee's Deed. Plaintiffs appear to contend that the foreclosure sale was improper, and that Defendant's claim to the Property is therefore invalid, because: 1) Defendant was not the holder of the Note at the time of foreclosure, 2) Defendant had not been validly assigned the Deed of Trust at the time of foreclosure, and 3) Plaintiffs were not sent notices of default prior to foreclosure in compliance with Chapter 51 of the Texas Property Code. The Court will consider each argument in turn.

**1. Whether Defendant Held the Note at the Time of Foreclosure**

Under Texas law, a holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." TEX. BUS. & COM. CODE § 1.201(b)(21)(A). "A person can become the holder of an instrument when the instrument is issued to that person, or he can become a holder by negotiation." *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing TEX. BUS. & COM. CODE § 3.201 cmt. 1). When the instrument is payable to an identified entity, "negotiation requires transfer of possession of the instrument and its indorsement by the holder." *Id.* (quoting TEX. BUS. & COM. CODE § 3.201(b)).

Here, the evidence does not establish that Defendant is the holder of the Note because there is no indication on the Note that Aames indorsed the Note to Defendant or indorsed the note in blank.[3]

However, even if a person is not the holder of a note, he may still be able to prove that he is entitled to enforce a note by relying on common-law principles of assignment to establish that he is the note's owner. *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also* TEX. BUS. & COM. CODE § 3.203(b) ("Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course."). "A non-holder seeking to enforce a note must prove the transfer by which he acquired the note." *Martin*, 377 S.W.3d at 84. "An issue of material fact on the issue of ownership of a note is presented when there is an unexplained gap in the chain of title." *Leavings*, 175 S.W.3d at 309.

---

[3] In Defendant's motion for summary judgment, Defendant asserts that Aames indorsed the Note in blank. (MSJ at 19.) However, upon review of the copy of the Note in the record, there is no indication of an indorsement anywhere on the Note or on an allonge to the Note.

Here, the Assignment shows that Aames purported to "transfer and assign" the Note to Defendant, as Trustee for Credit Suisse First Boston 2004-AA1. There are no gaps in the chain of title and the Assignment was executed well before the foreclosure sale occurred. Thus, as long as the Assignment was valid, Defendant has established that it owned the Note, and was therefore entitled to enforce the Note, at the time of foreclosure.

Plaintiffs contend that the Assignment did not effectively transfer the Note because: 1) either Sherita Duck did not have authority to execute the Assignment herself or the Assignment was forged, and 2) the Assignment and the Note violated various provisions of a pooling and servicing agreement.

**a. Is the Assignment Void Because of an Infirmity Regarding Sherita Duck's Signature?**

***i. Plaintiffs' Argument that Sherita Duck Was Not Authorized to Execute the Assignment***

In their Fourth Amended Complaint, Plaintiffs assert that Sherita Duck "is in fact not an employee of Aames." (Fourth Am. Compl. ¶5.)[4] Plaintiffs therefore appear to argue that Sherita Duck did not have authority to execute the Assignment. (*See* Resp. ¶ 5.)

Plaintiffs' argument that Sherita Duck was unauthorized to execute the Assignment because she was not an employee of Aames cannot withstand summary judgment for several reasons. First, Plaintiffs have not provided any evidence to support their contention that Sherita Duck was not actually an employee of Aames. Second, Plaintiffs have not produced any evidence demonstrating, or even alleged in their Fourth Amended Complaint, that Sherita Duck was not authorized to execute the Assignment on behalf of Aames as an agent. Third, even if

---

[4] Rather, Plaintiffs assert that Sherita Duck is an employee of a company located in Los Angeles, California called Management Resources, Inc.

Sherita Duck had not been authorized to execute the Assignment, Plaintiffs would lack standing to challenge the validity of the Assignment on that ground. As this Court has recognized, "Texas law permits a debtor to challenge an assignment on a ground that renders the assignment void or invalid, but a debtor may not challenge an assignment on a ground that renders the assignment merely voidable." *Venegas v. U.S. Bank, Nat'l Ass'n*, No. SA:12-CV-1123-XR, 2013 WL 1948118, at *5 (W.D. Tex. May 9, 2013). Plaintiffs' contention that Sherita Duck lacked authority to execute the Assignment, if true, would suggest that the Assignment is merely voidable. *See Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976) (holding that an agent who executes a document without authority has not committed a forgery, and the document is not void, if the agent has executed the document purporting on its face to be executed by him as an agent). Accordingly, Plaintiffs' argument that Sherita Duck lacked authority to execute the Assignment fails as a matter of law.

### ii. Plaintiffs' Argument that the Assignment Was Forged

Although not alleged in their Fourth Amended Complaint, Plaintiffs appear to argue in their response that the Assignment may have been forged. This argument is not properly before the Court and must therefore be dismissed because it was raised for the first time in Plaintiffs' response to Defendant's motion for summary judgment. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

Additionally, Plaintiffs' argument fails as a matter of law because Plaintiffs have not produced sufficient competent summary judgment evidence to support a finding that the

Assignment was forged. In support of their argument, Plaintiffs attached the affidavit of Curt

Baggett, a "forensic document examiner and handwriting expert." (*See* Resp., Ex. 7.) In his

affidavit, Mr. Baggett testifies that he examined the Assignment and determined the following:

> After searching for comparison documents without success, I recommend that more information post discovery is needed for this individual. Based on my experience and because the Sherita Duck signature appears to have been signed by the same author who signed the name of L. Arnoff [the notary], it is possible and probable that both of these signatures are robosigned. Deposing this individual to get signature samples is needed to compare to the assignment document.
>
> An examination of handwriting includes establishing patterns of writing habits to help identify the author. Handwriting is formed by repeated habits of writing by the author, which are created by neuro-pathways established in the brain. These neuro-pathways control muscular and nerve movement for writing whether the writing is executed by hand, foot, or mouth.
>
> Based upon thorough analysis of these items and from an application of accepted forensic document examination tools, principles and techniques, it is my professional expert opinion that there are many similarities between the Sherita Duck and the L. Arnoff signatures, which indicate that one person authored both signatures on the questioned document.

(Resp., Ex. 7 at 2.) In reply, Defendant asserts that the expert report is not competent summary

judgment evidence because the expert was not disclosed in Plaintiffs' designation of expert

witnesses, the report is irrelevant and speculative, and the expert's opinions are not sufficiently

supported by methodology and are not helpful to the fact-finder because they are equivocal as to

whether there was a forgery. (Reply at 21.)

The Court finds that Mr. Baggett's affidavit is not competent summary judgment

evidence sufficient to support a finding that the Assignment was forged for several reasons.

First, the affidavit must be stricken as untimely. Federal Rule of Civil Procedure

26(a)(2)(A) requires a party to disclose the identity of the expert witnesses it may use at trial, and

Rule 26(a)(2)(D) requires the disclosures to be made "at the times and in the sequence that the

court orders." A district court has authority to control pretrial discovery through a scheduling order pursuant to Rule 16(b) and, consistent with that authority, the district court has "broad discretion to preserve the integrity and purpose of the pretrial order" and to "exclude evidence as a means of enforcing a pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (internal quotation marks omitted). When deciding whether to exclude evidence that was not properly designated, a district court should consider: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Id.* at 791. Here, the First Amended Scheduling Order provides that the deadline for Plaintiffs to identify and exchange expert reports was February 15, 2013, and the deadline for filing supplemental reports was March 29, 2013. (*See* Doc. No. 43.) Defendant has produced an affidavit showing that Plaintiffs did not timely disclose Mr. Baggett as an expert and Plaintiffs have not provided any explanation for their failure to do so. Accordingly, Mr. Baggett's testimony is stricken.

Second, the affidavit is inadmissible as evidence. Federal Rule of Evidence 702 permits testimony from an expert witness if the testimony "will assist the trier of fact and (1) 'the testimony is based on sufficient facts or data,' (2) 'the testimony is the product of reliable principles and methods,' and (3) 'the expert has reliably applied the principles and methods to the facts of the case.'" *U.S. v. Wen Chyu Liu*, ---F.3d---, 2013 WL 1875810, at *5 (5th Cir. 2013) (quoting FED. R. EVID. 702). A trial court must determine whether the expert's testimony is "not only relevant, but reliable." *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). In his affidavit, Mr. Baggett has not described any "reliable principles [or] methods" on which his opinion is based. Although he states that he has applied "forensic

document examination tools, principles and techniques," he does not explain his tools, principles and techniques or indicate how they were applied in this case. Furthermore, Mr. Baggett's opinion appears to be speculative because he states that "more information . . . is needed." Accordingly, Mr. Baggett's affidavit is not competent summary judgment evidence.

Finally, even if the Court were to consider Mr. Baggett's affidavit, the affidavit fails to raise a fact issue as to the validity of the Assignment. Even if Sherita Duck's signature was made by the same person or entity that made the notary's signature, a forgery was not necessarily committed so long as the signatures were authorized. *See Nobles*, 533 S.W.2d at 926 ("Forgery is the making *without authority* of a false instrument in writing, purporting to be the act of another . . . .") (emphasis added) (quoting *Smith v. Dawson*, 234 S.W. 690 (Tex. Civ. App.—San Antonio 1921, n.w.h.)). Indeed, Plaintiffs themselves concede that Mr. Baggett's affidavit is insufficient to support a finding of forgery. (*See* Resp. ¶ 10) (stating that Plaintiffs do "not have sufficient evidence of forgery on this assignment as of yet").

Accordingly, Plaintiffs have failed to produce sufficient evidence for a reasonable juror to find that the Assignment was void because of an infirmity regarding Sherita Duck's signature.

### b. Is the Assignment Void Because It Violated the Terms of a Pooling and Servicing Agreement?

It appears undisputed that at some point Plaintiffs' mortgage was securitized in a mortgage pool and that the mortgage pool was governed by a pooling and servicing agreement ("PSA"). In their response to Defendant's motion for summary judgment, Plaintiffs argue that the Assignment is void because it was not timely recorded within the deadline set forth in the PSA and, although somewhat unclear, Plaintiffs also appear to implicitly argue that the

Assignment is void because the Note was not properly indorsed pursuant to the PSA's requirements. Defendant argues that Plaintiffs' PSA-related challenges to the Assignment fail because: 1) Plaintiffs lack standing to challenge the Assignment on the ground that it violates the PSA because Plaintiffs are neither parties to the PSA nor third-party beneficiaries of the PSA; 2) the Assignment complied with the PSA because it was timely executed within the PSA's deadline; and 3) failures to comply with the terms of a PSA have no bearing on the enforceability of the Note and Deed of Trust.

### i. Whether the Assignment Is Void Because It Was Not Timely Recorded Within the PSA's Deadline

In their Fourth Amended Complaint, Plaintiffs do not explicitly allege that the PSA was violated because the Assignment was untimely recorded. Rather, Plaintiffs raise the claim for the first time in their response to Defendant's motion for summary judgment. Accordingly, the claim must be dismissed because it is not properly before the Court.[5]

Regardless, even if the Court were to consider Plaintiffs' contention that the Assignment is void because it was recorded after the applicable PSA deadline, the argument fails as a matter of law. In support of their argument, Plaintiffs assert that "[t]he Court can see that on [p]age 52 of the PSA (Exhibit 9) the Trustee is required to, within 60 days of the closing date, record an assignment in the appropriate county records." (Resp. ¶ 5.) However, page 52 of the PSA does not indicate that a failure to timely record the Assignment would render the Assignment void

---

[5] Both the PSA and the Assignment are matters of public record and were therefore available to Plaintiffs before they filed their lawsuit; discovery was not required.

under the terms of the PSA. Plaintiffs do not refer to any other provision of the PSA to support their contention.[6]

Furthermore, Plaintiffs' own expert's testimony suggests by negative implication that a failure to timely record the Assignment within the PSA's deadline would not necessarily render the Assignment void. Plaintiffs have produced the affidavit of Ezequiel Martinez, a "Certified Forensic Loan Auditor," to support their PSA-related arguments. In his affidavit, Mr. Martinez lists the reasons for his opinion that the Assignment was "defective." Notably, Mr. Martinez does not list the failure to timely record the Assignment as one of the reasons for his opinion that the Assignment was "defective." (*See* Resp., Ex. 8 ¶ 21.) Thus, Plaintiffs have failed to show that a failure to timely record the Assignment within the PSA's deadline would render it invalid.

### ii. Whether the Assignment Is Void Because the Note Was Not Properly Indorsed Pursuant to the Terms of the PSA

In their response, Plaintiffs also argue that the Note violates the PSA because it is not properly indorsed pursuant to the terms of the PSA. Plaintiffs appear to be implicitly arguing that the lack of an indorsement somehow vitiates the effectiveness of the Assignment. In support of their argument, Plaintiffs rely on the affidavit of Mr. Martinez. In his affidavit, Mr. Martinez states that the "industry standard, custom, and practice in mortgage securitization was for the promissory notes to transfer from the originating lender, to the sponsoring entity, and then to the depositor. The depositor would then culminate the chain of ownership transfer by indorsing the promissory note to the trust. This entire A to B to C to D chain of ownership would be evidenced by a chain of indorsements stamped on the note." (Resp., Ex. 8 ¶ 14.) Because there are no

---

[6] The Court declines to independently search through and interpret the entire PSA, which is over 150 pages long and of which neither party has provided the Court with a full copy, to find evidence of a provision that might support Plaintiffs' contention. *See Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 651 (5th Cir. 2012) (holding that "the district court needs to be pointed to . . . evidence as opposed to having to engage in an extensive search").

specific indorsements on the Note in this case, Mr. Martinez concludes that "the defendant is not, and never has been, the owner of [the Note]." (Resp., Ex. 8 ¶ 21.)

However, Mr. Martinez's statements, even if true, do not impugn the validity of the Assignment at issue in this case. As described *supra*, the plain face of the Assignment shows that the Note and Deed of Trust were transferred from the original lender, Aames, to Defendant, therefore establishing that Defendant owned the Note and Deed of Trust and was able to enforce them at the time of foreclosure. Mr. Martinez's statements do not address why a lack of indorsements on the Note—even if in violation of the PSA—would somehow vitiate the plain face of the Assignment. Plaintiffs have not pointed to any other evidence in support of their argument that the Assignment is somehow invalid for lack of PSA-required indorsements on the Note. Nor have Plaintiffs provided any authority for their position.[7] Accordingly, Plaintiffs' argument fails as a matter of law.

### iii. Plaintiffs Lack Standing to Assert Their PSA-Based Challenges to the Assignment

Plaintiffs' PSA-based challenges to the Assignment fail as a matter of law because Plaintiffs lack standing to assert them. Federal district courts in Texas have consistently held that a mortgagor does not have standing to challenge an assignment of a mortgage loan based on alleged violations of a PSA. *See Calderon v. Bank of Am., N.A.*, No. SA:12-CV-121-DAE, 2013 WL 1741951, at *11 (W.D. Tex. Apr. 23, 2013) (holding that the plaintiffs did not have standing to challenge an after-the-deadline-transfer of a mortgage loan in violation of a PSA because the transfer would merely be voidable at the election of the parties to the PSA, not void); *Abruzzo v. PNC Bank, N.A.*, No. 4:11-CV-735-Y, 2012 WL 3200871, at *2 (N.D. Tex. July 30, 2012)

---

[7] In their response, Plaintiffs cite *Kluge v. Fugazy*, 145 A.D.2d 537 (N.Y. App. Div. 1988), for the proposition that "[u]nder New York Law and [sic] violation of a trust instrument makes that transaction void." (Resp. ¶ 9.) However, *Kluge* does not appear to be relevant to Plaintiffs' statement because the case does not refer to a violation of a "trust instrument" or a PSA at all.

(holding that the plaintiffs did not have standing to challenge the assignment of their mortgage on the ground that the assignment violated a PSA because the plaintiffs were not parties to the PSA); *Kiggundu v. Mortg. Elec. Registration Sys., Inc.*, No. 4:11-1068, 2011 WL 2606359, at *4 (S.D. Tex. June 30, 2011) (holding that the plaintiff did not have the right to complain if the terms of the PSA were not followed and that his argument regarding violations of the PSA had no merit in connection with precluding the defendant's right to foreclose), *aff'd*, 469 F. App'x 330 (5th Cir.), *cert. denied*, 133 S.Ct. 210 (2012).

Plaintiffs argue that they are third-party beneficiaries of the PSA, and thus have standing to challenge non-compliance with the PSA, because the mortgage pool was "created for the direct benefit of the Plaintiffs and millions of others." (Resp. ¶ 5.)[8] This argument lacks merit. Under New York law, which appears to govern the PSA,[9] "[a] party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *State of Cal. Pub. Emps.' Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35 (N.Y. 2000) (internal quotation marks omitted). The intention to confer the benefit of the promised performance must be "clear." *PT. Bank Mizuho Indonesia v. PT. Indah Kiat Pulp & Paper Corp.*, 25 A.D.3d 470, 471 (N.Y. App. Div. 2006).[10] Plaintiffs have not pointed to any evidence establishing that the PSA was clearly intended to benefit them or that they were going to receive a sufficiently immediate benefit from

---

[8] Plaintiffs further argue that the mortgage pool was "created in order for the banks to attract investor money so that the banks would have the assets to fund loans like this which were mandated by Federal Law relating to banks loosening their lending qualifications to approve first time home buyers." (Resp. ¶ 5.)

[9] *See* PSA § 10.03.

[10] Texas law is in accord. *See Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) ("[I]n the absence of a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party, courts will not confer third-party beneficiary status by implication.").

the PSA.[11] Accordingly, Plaintiffs lack standing to enforce the terms of the PSA as third-party beneficiaries.[12] As a result, Plaintiffs' PSA-related challenges to the Assignment fail as a matter of law.

### c. Conclusion

In sum, Plaintiffs have not produced sufficient competent summary judgment evidence to support a finding that the Assignment is void or otherwise invalid. Accordingly, no reasonable juror could find that Defendant was not the owner of the Note at the time of foreclosure.

## 2. Whether Defendant Had Been Validly Assigned the Deed of Trust at the Time of Foreclosure

The Assignment purports to transfer both the Note and the Deed of Trust from Aames, the original lender, to Defendant, as Trustee for Credit Suisse First Boston 2004-AA1. As described above, all of Plaintiffs' challenges to the Assignment fail as a matter of law. Accordingly, no reasonable juror could find that Defendant had not been validly assigned the Deed of Trust at the time of foreclosure.

## 3. Whether Plaintiffs Were Sent Notices of Default in Compliance with Section 51.002(d) of the Texas Property Code Prior to Foreclosure

In their Fourth Amended Complaint, Plaintiffs allege that they "never received any notice to cure, acceleration [sic] or intent to foreclose in compliance with Chapter 51 [sic] the Texas

---

[11] To the contrary, courts have recognized that investors, rather than mortgagors, have the right to complain if the terms of a PSA are not followed. *See Kiggundu*, 2011 WL 2606359, at *4.

[12] Plaintiffs also argue that "the courts have decided that if the assignment directly affects the ability of the Plaintiffs to determine who the holder is, who they should pay or whether or not the entity attempting to foreclose has standing to foreclose based on compliance with the deed of trust and note then the Plaintiffs would have standing to challenge a fraudulent and void assignment." (Resp. ¶ 5.) Plaintiffs cite no case law for this contention and it is unclear whether the statement even applies directly to their PSA-based challenges. Regardless, this contention does not alter the Court's holding because, as explained above, Plaintiffs have not pointed to any evidence establishing that the alleged violations of the PSA would render the Assignment void or otherwise affect Plaintiffs' ability to ascertain the entity that had authority to foreclose.

15

Property Code because neither the holder or owner of this note and deed of trust has provided them with notice of default." (Fourth Am. Compl. ¶ 11.) Plaintiffs allege that "Defendant's attorneys at Brice [sic][13] attempted to send the notice but the notice was never mailed out. Nor is there any evidence that the notices [sic] ever went into the U.S. Postal system [sic]." (Fourth Am. Compl. ¶ 11.) From these allegations, it appears that Plaintiffs are alleging that they did not each receive a notice of default in compliance with the Texas Property Code and that, as a result, the foreclosure sale was invalid. (Fourth Am. Compl. ¶¶ 11, 21.)[14]

Section 51.002 of the Texas Property Code requires that a debtor be served with two notices prior to foreclosure: a notice of default and a notice of sale. TEX. PROP. CODE. § 51.002(b), (d); *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 855-56 (5th Cir. 2009) (per curiam). The notice of default must be served on the debtor by certified mail and must give the debtor at least twenty days to cure the default. TEX. PROP. CODE § 51.002(d).[15] Once that twenty-day notice period expires, the notice of sale must be served on the debtor by certified

---

[13] Plaintiffs are likely referring to Brice Vander Linden & Wernick, P.C., which acted as foreclosure counsel for Wells Fargo Bank, N.A., the mortgage servicer acting on behalf of Defendant.

[14] In both their Fourth Amended Complaint and their response to Defendant's motion for summary judgment, Plaintiffs occasionally refer to "notices," which makes it somewhat unclear whether they are attempting to allege that they also did not receive notices of sale. However, the Court concludes that Plaintiffs are only asserting that they did not receive notices of default and intent to accelerate because, in their response to Defendant's motion for summary judgment, Plaintiffs argue that they were not provided with a "notice of default," cite section 51.002(d) of the Texas Property Code, and refer to Defendant's Exhibit A2, which is a copy of a notice of default that Defendant claims to have sent. (*See* Resp. ¶ 8.) Furthermore, any claim that Plaintiffs did not receive notices of sale would fail as a matter of law because the argument was not specifically asserted in the Fourth Amended Complaint and is therefore not properly before the Court.

[15] Section 51.002(d) provides in full:

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.

In this case, the Deed of Trust also required the notice of default to indicate that a failure to timely cure the default would result in acceleration. (*See* Deed of Trust ¶ 22.)

mail at least twenty one days before the date of the foreclosure sale. TEX. PROP. CODE § 51.002(b)(3). Service by certified mail is complete "when the notice is deposited in the United States mail"; receipt of the notice by the debtor is not required. TEX. PROP. CODE § 51.002(e); *Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835 (Tex. App.—Fort Worth 1999, pet. denied). "The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." TEX. PROP. CODE § 51.002(e).

Under Texas law, a foreclosure sale may be set aside as invalid if notice under section 51.002 is not properly and timely served. *See Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 n.6 (5th Cir. 1989) (recognizing that under Texas law "a sale without the required twenty-one days' notice is invalid or void"); *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 232-34 (Tex. 1982) (reversing take-nothing judgment on a wrongful foreclosure claim on the basis that any attempted acceleration was ineffective because the mortgagee did not give proper notice of its intent to accelerate); *Lido Int'l, Inc. v. Lambeth*, 611 S.W.2d 622, 623-24 (Tex. 1981) (reversing take-nothing summary judgment on a plaintiff's suit to vacate and set aside a foreclosure sale because a fact issue existed as to whether a notice of sale was sent to the debtor's most recent mailing address); *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940, 942 (Tex. App.—Corpus Christi 1988, writ denied) (holding that the bank's failure to send a notice of sale by certified mail was sufficient reason for the trial court to set aside the foreclosure sale of property); *Phipps v. Fuqua*, 32 S.W.2d 660, 662 (Tex. Civ. App.—Amarillo 1930, writ ref'd) (holding that failure to give proper notice of a sale of land under a deed of trust renders the sale void and that the sale "can be set aside as a cloud on the title of the owner"); *see generally Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 768 (Tex. 1983) ("Compliance with the

notice condition contained in the deed of trust and as prescribed by law is a prerequisite to the right of the trustee to make the sale.").

The record in this case contains copies of notices of default that Defendant claims to have sent to Plaintiffs on February 28, 2010. (MSJ, Exs. A2 and A3.)[16] Plaintiffs appear to challenge the notices of default in two ways: 1) that the notices are not compliant with section 51.002(d) because they did not unequivocally state Defendant's intent to accelerate, and 2) that the notices were never actually mailed.

Plaintiffs argue that the notices did not unequivocally demonstrate Defendant's intent to accelerate because the notices only mention the "possibility" of acceleration. (Resp. ¶ 8.) To support their argument, Plaintiffs point to a particular phrase in the notices that does indeed refer to the "possibility of acceleration." (*See* Resp., Ex. 10) (stating that "[t]o avoid the possibility of acceleration, you must pay this amount on or before . . ."). However, Plaintiffs' argument ignores the following paragraph of the notices, which states: "If funds are not received by the above referenced date, we *will* proceed with acceleration." (Resp., Ex. 10) (emphasis added). Thus, when viewed as a whole, the notices unequivocally demonstrated Defendant's intent to accelerate if the default were not timely cured.

Plaintiffs also argue that Plaintiff Brian Rodriguez's affidavit raises a fact issue as to whether the notices of default were ever actually mailed. In his affidavit, Brian Rodriguez states the following:

> During the course of this litigation, we [Plaintiffs] have been presented with documents which the Defendant has purported that they [sic] mailed to us. Because we never received any of the letters, we investigated whether or not the letters were actually mailed to us. We have discovered that there is actually no record of the certified letters being mailed to us and in fact we never received

---

[16] The record contains copies of two notices of default. One notice is addressed to Brian Rodriguez and the other notice is addressed to Marina Rodriguez. The notices appear to be identical in all other respects.

18

them. We had no idea that we had been foreclosed on and that the bank had
bought the property at auction.

(Resp., Ex. 1 at 2.) Although Brian Rodriguez states that Plaintiffs "investigated" and
"discovered" that there is no record that the letters were mailed, Plaintiffs do not provide any
evidence of their "investigation" or explain how they determined that there is no record of the
letters having been mailed. Thus, Brian Rodriguez's statements amount to an assertion that
Plaintiffs never received the notices of default. The overwhelming majority of federal and Texas
state courts have held that a plaintiff's contention that he did not receive proper notice under
section 51.002 is insufficient to defeat a defendant's prima facie showing that notice was mailed
in compliance with the statute. *See Martins v. BAC Home Loans Servicing, L.P.*, No. 12-20559,
2013 WL 1777487, at *2 (5th Cir. 2013) (affirming summary judgment in favor of the defendant
despite the plaintiff's claim that he did not receive a notice of sale because the defendant showed
compliance with section 51.002 by presenting evidence of mailing the notice and an affidavit to
that effect); *Gallow v. Bank of N.Y. Mellon Trust Co. NA*, No. 3:12-CV-217, 2013 WL 1736694,
at *1-2 (S.D. Tex. Apr. 22, 2013) (holding that summary judgment was appropriate despite the
plaintiff's contention that she did not timely receive notice of default because the defendant
established compliance with Texas law by producing copies of the notice of default, notice of
acceleration, notice of sale, and two affidavits certifying that the notices were sent to the
plaintiff); *Adebo v. Litton Loan Servicing, L.P.*, No. 01-07-00708-CV, 2008 WL 2209703, at *4
(Tex. App.—Houston [1st Dist.] May 29, 2008, no pet.) (affirming summary judgment in favor
of the defendant despite the plaintiff's contention that he had not received proper notice under
section 51.002 because the defendant had provided the affidavits of its vice-president and the
foreclosure director of the foreclosing agency, both of whom averred compliance with the

certified mail requirement); *Stanley v. CitiFinancial Mortg. Co., Inc.*, 121 S.W.3d 811, 817-18 (Tex. App.—Beaumont 2003, pet. denied) (holding that the plaintiff's affidavit statement that he failed to receive a required notice under section 51.002 did not constitute "even a scintilla of competent summary judgment evidence" that the defendants failed to comply with the statutory notice requirements); *Thornton v. Chase Manhattan Mortg. Corp.*, No. 12-01-00182-CV, 2002 WL 253914, at *2 (Tex. App.—Tyler Feb. 20, 2002, no pet.) (finding that the defendant demonstrated compliance with section 51.002 by providing an affidavit of an operations manager familiar with the foreclosure proceedings and a copy of the notice of default and holding that the plaintiff's assertion that she never received notice under section 51.002 did not "negate [the defendant]'s acts in compliance with the statute"); *but see Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 140 (Tex. App.—Corpus Christi 2008, no pet.) (holding that there was a fact issue as to whether the plaintiffs were served with proper notice under section 51.002 where the defendant produced an affidavit averring that the notices were sent but one of the plaintiffs testified that he never received the notices).

However, in this case, Defendant has failed to make a prima facie showing that it complied with the requirements of section 51.002(d) because there is no evidence that Defendant sent the notices of default by certified mail.

The Court has identified the following evidence in the record indicating that Defendant "sent" or "mailed" the notices of default to Plaintiffs. In his declaration, Michael Dolan, Research and Mediation Manager for Wells Fargo Bank, N.A., states that "[o]n February 28, 2010, America's Servicing Company (a wholly owned subsidiary of Wells Fargo Bank, N.A.) sent to Plaintiffs at the Property address . . . a notice of default, which included an opportunity to

cure." (MSJ, Ex. A ¶ 7.)[17] Furthermore, on the Trustee's Deed itself, the substitute trustee declared that "a written notice of default and intention to accelerate" was timely "mailed" to "all debtors in default." (MSJ, Ex. F.) An Affidavit of Mortgage Servicer was also recorded with the Trustee's Deed in which Amber Morris, an agent of Wells Fargo Bank, N.A.'s foreclosure counsel, declared that "[t]o the best of [her] knowledge and belief, proper notice was sent prior to acceleration of the indebtedness and all notices were served on the Debtor at the Debtor's last known address as shown by the records of the Mortgage Servicer." (MSJ, Ex. F.)

However, notably absent from the record is any argument or evidence that the notices of default were sent by *certified mail*. Defendant has not provided copies of certified mail receipts for the notices of default and none of the sworn statements in the record aver that the notices of default were sent by certified mail.[18] Without any evidence that the notices of default were sent by certified mail, the Court cannot find that Defendant has made a prima facie showing of compliance with section 51.002(d). Thus, the Court cannot find that the foreclosure sale was necessarily valid.[19] As a result, Defendant is not entitled to summary judgment on Plaintiffs' claim to quiet title.

---

[17] Both notices of default are attached to Mr. Dolan's declaration and are dated February 28, 2010. (MSJ, Exs. A2 and A3.)

[18] The Court notes that evidence in the record shows that notices of sale were sent by certified mail. Defendant has provided the declaration of Selim Taherzadeh, an attorney for Wells Fargo Bank, N.A.'s foreclosure counsel, and in his declaration he avers that foreclosure counsel sent notices of acceleration and sale, dated June 15, 2010, to Plaintiffs Brian Rodriguez and Marina Rodriguez "via certified mail, return receipt requested." (MSJ, Ex. D ¶¶ 5-6.) Attached to his declaration are copies of mailing labels as well as the notices themselves. Additionally, the Affidavit of Mortgage Servicer states that foreclosure counsel "served a Notice of Acceleration and Notice of Trustee's Sale on every debtor obligated on the debt, in strict compliance with the Texas Property Code, by certified mail." (MSJ, Ex. F ¶ 7.) Mr. Dolan's declaration further corroborates that notices of acceleration and sale were sent "on June 15, 2010, by certified mail, return receipt requested." (MSJ, Ex. A ¶ 7.) However, the Court is not aware of any evidence in the record demonstrating that the notices of default were likewise sent by certified mail.

[19] The Court recognizes that the Deed of Trust expressly governs the procedure by which Plaintiffs were to be notified of default and that the Deed of Trust does not require the notices of default to have been sent by certified mail. However, the language of section 51.002(d) makes clear that its requirements cannot be waived. *See* TEX. PROP. CODE § 51.002(d) ("Notwithstanding any agreement to the contrary. . . ."). Texas courts have so recognized. *See Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 279 (Tex. App.—Houston [1st Dist.] Mar. 11, 2004, pet. dism'd) ("[T]he Legislature added subsection (d) to clarify that a residential debtor's right to notice and to cure

**B. Cause of Action for Violation of the U.C.C.**

In their Fourth Amended Complaint, Plaintiffs assert a cause of action for "U.C.C. Violations." In connection with their claim, Plaintiffs assert that Defendant is not the holder of the Note because Defendant cannot prove the elements of holder status and assert that Defendant had no right to enforce the Note "due to the fraud and illegal acts of transferring the note and deed of trust." (Fourth Am. Compl. ¶¶ 18-19.) Plaintiffs cite sections 3.203, 3.301, 3.309, and 3.418(d) of the Texas Business and Commerce Code in support of their assertions.[20]

As explained above, the record in this case conclusively establishes that Defendant had the right to enforce the Note as the Note's owner at the time of foreclosure. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' cause of action for violation of the U.C.C.

**C. Texas Civil Practice and Remedies Code Claim**

Plaintiffs assert a cause of action under Chapter 12 of the Texas Civil Practice and Remedies Code. In connection with their claim, Plaintiffs assert that "at the time of the filing of the above filed assignments [sic] that the Defendant has [sic] knowledge that the assignment was a fraudulent instrument and recorded the instrument in order that [sic] the Defendant could foreclose against [sic] Plaintiff's [sic] property." (Fourth Am. Compl. ¶ 22.) Plaintiffs then make allegations that track the language of section 12.002(a) of the Texas Civil Practice and Remedies Code almost verbatim. (Fourth Am. Compl. ¶ 22.)

Section 12.002(a) of the Texas Civil Practice and Remedies Code provides:

---

could not be waived by agreement."); *Thomas v. Compass Bank*, No. 01-01-00467-CV, 2002 WL 1340333, at *3 (Tex. App.—Houston [1st Dist.] June 20, 2002, no pet.) (holding that the defendant was required to give the plaintiffs written notice of their default and at least twenty days to cure despite a contractual waiver).

[20] Texas's version of the U.C.C. is codified in the Business and Commerce Code. *See 1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 376, 380 n.1 (Tex. 2011).

(a) A person may not make, present, or use a document or other record with:

> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

> (3) intent to cause another person to suffer:

>> (A) physical injury;

>> (B) financial injury; or

>> (C) mental anguish or emotional distress.

"The party asserting a claim under section 12.002 has the burden to prove the requisite elements of the statute." *Aland v. Martin*, 271 S.W.3d 424, 430 (Tex. App.—Dallas 2008, no pet.).

As described above, Plaintiffs have failed to produce competent summary judgment evidence to support a finding that the Assignment was fraudulent. Furthermore, Plaintiffs have failed to produce evidence demonstrating that Defendant had any knowledge of a fraudulent document or that Defendant intended to cause another person to suffer any type of injury, mental anguish, or emotional distress. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' cause of action under the Texas Civil Practice and Remedies Code.

## D. Cause of Action for Breach of Contract

With regard to their cause of action for breach of contract, Plaintiffs assert the following:

> This matter cause [sic] is pled in the alternative and is only upon proof that the Defendant is the holder [sic]. Plaintiff [sic] would assert that under the note that upon payment of the note [sic] that the Plaintiff [sic] was entitled to release or in the alternative, if the note was paid down through credit default swaps or

23

default insurance Plaintiffs were entitled to proper credit for said payments. Plaintiffs have conducted a Bloomberg audit which appears to indicate that pool to which this note was deposited is almost 50% paid off. Therefore, the Plaintiffs owe substantially less to the Defendants [sic] that is being alleged or was alleged at the time of the foreclosure. Plaintiff [sic] would assert that Defendant has been paid in full or in part by multiple insurance policies, such that, in the event that Defendant is the holder [sic] that Defendant is not entitled to foreclose [sic] but Plaintiff [sic] is entitled to a release of the deed interest the subject of this suit or proper credit for all payments made on the note such that Plaintiff [sic] owes substantially less. Plaintiffs assert that they is [sic] entitled to specific performance.

(Fourth Am. Compl. ¶ 24.) Defendant argues that it is entitled to summary judgment on Plaintiffs' breach of contract cause of action because Plaintiffs did not fulfill their contractual obligations under the Note and Deed of Trust.

Under Texas law, "[t]he elements in a claim for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 898 (Tex. App.—San Antonio 2002, no pet.). "It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (per curiam) (internal quotation marks omitted). Similarly, "[a]n essential element in obtaining the equitable remedy of specific performance is that the party seeking such relief must plead and prove he was ready, willing, and able to timely perform his obligations under the contract." *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008).

Here, there is no evidence that Plaintiffs performed their payment obligations under the terms of the Note and Deed of Trust. To the contrary, Plaintiffs concede that they "fell behind on the mortgage." (Resp., Ex. 1 at 2.) Nor is there any evidence to support Plaintiffs' allegation that

the Note was "paid down" through "credit default swaps or default insurance" or that such payments would have satisfied Plaintiffs' obligations under the terms of the Note and Deed of Trust. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' breach of contract cause of action.

## IV. Conclusion

In light of the foregoing, Defendant's motion for summary judgment (Doc. No. 46) is granted in part and denied in part.

Defendant's motion for summary judgment is granted with respect to Plaintiffs' causes of action for violation of the U.C.C., violation of Chapter 12 of the Texas Civil Practice and Remedies Code, and breach of contract. Accordingly, those three causes of action are dismissed.

Defendant's motion for summary judgment is granted in part and denied in part with respect to Plaintiffs' cause of action to quiet title. Defendant's motion for summary judgment is denied with respect to Plaintiffs' claim to quiet title insofar as the Court cannot find from the current record that the foreclosure sale was valid because there is no evidence that Plaintiffs were sent notices of default by certified mail in compliance with section 51.002(d) of the Texas Property Code. Defendant's motion for summary judgment on Plaintiffs' cause of action to quiet title is granted in all other respects.

The sole issue remaining in this case is whether Defendant sent Plaintiffs notices of default by certified mail in compliance with section 51.002(d) of the Texas Property Code. Either party may file a motion for summary judgment on the issue by no later than July 3, 2013.

SIGNED this 18th day of June, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE